# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re: Mexcol Group LLC,

        Debtor.

Case No. 26-41179
Chapter 11
Judge: Mark A. Randon

_____/

## FIRST AMENDED
## **PLAN OF REORGANIZATION**

Mexcol Group LLC (the "Debtor") proposes this first amended plan of reorganization (the "Plan") through its undersigned counsel. This proposed plan of reorganization is subject to Bankruptcy Court approval and is for the resolution of outstanding claims against and interests in the Debtor pursuant to Chapter 11 of Title 11 of the United States Code (the "Code").

### **A. Description of the Debtor**

The Debtor owns and operates a mexican restaurant in Oxford, Michigan. The Debtor's owner is Jose Alberto Pimental. Mr. Pimental has operated out of this location since 2016 and the debtor bought the building in 2023. The Debtor employs between 6-10 people at any given time depending on the time of year. As indicated the debtor owns its location on Washington Street in Oxford, Michigan.

1

**B. <u>Causes of the Bankruptcy Filing</u>**

Prior to the filing of this case the debtor's principal operated several restaurants besides this location. The operation of multiple locations resulted in the Debtor being under capitalized. In addition, the debtor's principal was unable to spend the necessary hours at each location, and they all suffered. This under capitalization caused the debtor to look to nonconforming lenders for needed capital. When the debtor could no longer meet these obligations it filed this case.

**C. <u>Post Petition Litigation</u>**

Post petition certain things have happened which have impacted the Debtor and impact this plan:

1. The Debtor filed its first day motions for use of cash collateral and for the payment of wages. These motions were approved by the Court in the ordinary course.

2. The Debtor retained the undersigned counsel.

**D. <u>Post Petition Activity</u>**

1. The Debtor has been profitable post petition. It has increased its marketing efforts and worked to limit its costs.

2. The Debtor has worked with counsel and creditors in preparing this plan.

2

### E. Post Petition Financial Performance

As indicated above, post petition the Debtor has taken steps to improve its bottom line, to limit its food costs, to fine tune employee costs and to attract new customers. These changes support the financial projections prepared by the Debtor and attached to this plan. These changes have also resulted in profitability for the Debtor post petition. This profitability is in line with the projections prepared by the Debtor and attached hereto.

### F. Liquidation Analysis.

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**. In a liquidation, Debtors estimate a total of zero would be available to general unsecured creditors after deductions for liquidation costs, trustee fees and costs, as well as secured and priority claims. The Debtor is offering a $50,000 dividend to its general unsecured creditors over the life of the plan; a $50,000 increase over what they would see should the case convert to Chapter 7.

## G.  Financial Projection

The Debtor has provided projected financial projections as **Exhibit "B"**.

The Debtors financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) in an amount sufficient to meet the requirements of this Plan.

## ARTICLE 1 SUMMARY OF CLAIMS AND CLASSES

**This Plan provides for the following classes and claims:**

**Group 1:** Estimated Administrative Expense claims pursuant to 11 U.S.C.

| | |
|---|---|
| §507: Subchapter V Trustee fees: | $8000 |
| Debtor's Chapter 11 counsel fees + expenses: | $40,000 |
| Less Retainer Deposit: | ($5762) |
| Estimated Admin Expenses Due from Debtor: | $42,238 |

**Class 1:  Priority Claim of the State of Michigan**

The State of Michigan holds a priority claim of $75,000.  The State of Michigan has not filed a claim.

**Class 2:  Secured Claim of the City of Oxford**

The City of Oxford holds a statutory secured claim for personal property taxes in the amount of $11,000.

4

**Class 3:  Secured Claim of Harvest Bank**

Harvest Bank is a fully secured creditor of the Debtor owed $1,070,000.

This loan is secured by a mortgage on real estate owned by the debtor and used by the

debtor as the restaurant location in Oxford, Michigan.  Harvest Bank as well holds a

first lien on the debtor's personal property.

**Class 4:  Oakland County**

The Oakland County Treasurer holds a statutory real property tax lien in the amount of

 $30,000.

**Class 5:  Unsecured Creditors**

This class consists of those creditors listed on Schedule E/F who have not filed claims, the

unsecured portions of those creditors who allege secured claims and those creditors who

have filed unsecured claims.  The total amount of unsecured debt totals $774,900.

**ARTICLE 2 TREATMENT OF CLASSES OF CLAIMS**

**Group 1 Administrative Expense claims pursuant to 11 U.S.C. §507**

This class is Impaired.

Subchapter V Trustee fees of approximately $8000.  The fees of the Subchapter V

Trustee shall be paid $3000 upon any order approving her fees and in monthly installments

of $1,000 thereafter with the first monthly payment due 30 days from any order approving

5

same. Debtor's Chapter 11 Counsel fees total approximately $34,238 (net of retainer). The Debtor will pay the claim of counsel at the rate of $1,500 per month until paid in full with the first payment 30 days from any order approving same. This proposed distribution is subject to increase if the Debtor incurs additional administrative expenses including but not limited to expert witness expenses, additional attorney fees to promote confirmation of a contested plan and additional Subchapter V Trustee fees necessary to promote confirmation of this plan and/or to mediate plan confirmation by consent. Any increase in administrative expenses will be paid from the amounts the Debtor estimates for disbursement to Class 3 general unsecured creditors.

**Class 1:  Priority Claim of the State of Michigan**

This class is not impaired as the treatment of the claims of the State of Michigan is within the parameters of the code.   The State of Michigan will be paid over 57 months at 8.66% with the first payment of $1531 due 90 days from the date of the Order Confirming Plan.

**Class 2:    Secured Claim of the City of Oxford**

This class is impaired.  The City of Oxford will be paid over a 60 month period in monthly installments of $318 with interest to accrue at the statutory rate with the first payment due 90 days from confirmation.   City of Oxford will retain its liens.

6

**Class 3: Harvest Bank**

This class is impaired.

The treatment of the claim of Harvest Bank is as follows:

    A. Harvest Bank is fully secured as a fully secured creditor.

    B. The indebtedness shall be amortized for a 25 year period at 7% and shall balloon after 60 months. Should the Debtor be current with Harvest Bank at the end of 60 months the loan shall automatically renew at the then existing interest rate for like customers at the bank for an additional 60 months. Payments of $7563 per month shall be due to the bank with the first payment due 90 days from confirmation.

    C. The bank shall retain its liens.

    D. The Debtor shall at all times maintain all required policies of insurance and the bank shall have the right to inspect the premises upon reasonable notice.

**Class 4:  Oakland County**

This class is impaired. The City of Oakland County will be paid over a 60 month period in monthly installments of $696 with interest to accrue at the statutory rate. The first payment shall be due 90 days from confirmation.

**Class 5:  <u>Allowed Unsecured Creditors</u>**

This Class is impaired. General unsecured claims:   $774,900.

Unsecured creditors shall share in sum total of $50,000 over the life of the plan.

These funds shall be paid quarterly with the first of 16 quarterly payments of $3126 due 12 months from confirmation with each creditor paid on a prorata basis.

7

## ARTICLE 3 ALLOWANCE AND DISALLOWANCE OF CLAIMS

a. **Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

b. **Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 4 EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor has no leases or other executory contracts.

## ARTICLE 5 DISCHARGE

On the confirmation date of this Plan, if deemed consensual confirmation, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (a) imposed by this Plan; (b) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c) of the; or (c) of a kind specified in § 1141(d)(6)(B). In the event that this

8

Plan is confirmed as a non-consensual plan, Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code upon payment in full of the sums required under this Plan and application to the Court.

## ARTICLE 6 PLAN PROPOSED IN GOOD FAITH

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## ARTICLE 7 RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy

9

case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

## ARTICLE 8 LIQUIDATION ANALYSIS

The Debtor's Liquidation Analysis is attached as **Exhibit "A"**. The Debtor believes unsecured creditors would receive no dividend upon liquidation and Chapter 7 and Chapter 11 administrative expense claims and after the payment of secured claims. and priority claims. The Debtor proposes payment of $50,000 to unsecured creditors; a $50,000 improvement over what Debtor estimates recovery would be in a Chapter 7. All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to the Debtor. The estimates have not been subject to audit or appraisal. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time. Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition, reflect the Debtor's best estimate of the market value of its assets, except where noted to the contrary. In establishing the values, Debtor has considered the size, age, physical condition and location of the assets.

10

# ARTICLE 9 PLAN IMPLEMENTATION

a. **Plan projections**. The Debtor has attached as **Exhibit "B"**, its summary of post-confirmation financial projections for the life of the Plan. These projections are based on:

1. The Debtor's post petition performance.
2. The changes to its business made by the Debtor.
3. The Debtor's knowledge of the industry and this market.

## b. Voting and Acceptance of the Plan.

b.1 Debtor will only count ballots timely returned by impaired creditors.

b.2 If Debtor receives votes in an impaired creditor class, the plan shall be deemed accepted and confirmed by consent of the creditors if the ballots received in favor of the plan comprise a simple majority and two-thirds in dollar amount.

b.3 If no ballots are received or if an insufficient number of creditors vote in favor of the plan the Debtor may confirm the plan as a nonconsensual plan.

c. **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

11

## d.  Confirmation

a.1. If the Plan is confirmed under section 1191(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code section 1183 through Substantial Consummation of the Plan at which point his services shall terminate.

a.2. If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until the Trustee has performed such duties as are described in sections 1183 and 1194(b) and such other duties as he may have been assigned by the Bankruptcy Court prior to the Effective Date.

e. **Pre-Effective Date Injunctions or Stays.** All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

f. **Avoidance Actions.** Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to the Reorganized Debtor. The Debtor does not at this time anticipate the filing of any avoidance action.

12

g. **Preference.** As of the date of the filing of this plan the Debtor does not have any preference actions.

h. **Change of Address.** In order to ensure that it receives its distribution, each Creditor holding an Allowed Claim must advise the Reorganized Debtor of any change in address. Absent any such notification, the Reorganized Debtor or Subchapter V Trustee, as applicable, shall send payments to the address listed on the Matrix on file with the Bankruptcy Court.

i. **Vesting of Property.** Title to all property of the Debtor shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as Debtor and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan. In the event this case is converted to a Chapter 7, all property of the Debtor and reorganized debtor will revest in the estate.

j. **Monthly Reports.** The Debtor will remain responsible for filing timely Monthly Operating Reports until this case is confirmed, dismissed or converted to Chapter 7.

k. **Compromise of Litigation.** The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including

13

without limitation any Avoidance Action) available to the Debtor, the Estate, the Debtor-in- Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

## ARTICLE 10 MISCELLANEOUS PROVISIONS

a. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

b. **Effective Date of Plan.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

c. **Severability.** If any provision in this Plan is determined to be unenforceable, determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

d. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

14

e. **Appendices.** The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

f. **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

g. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Michigan govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

h. **Corporate Governance.** Not applicable where this is an individual debtor.

i. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

j. **Confirmation Order Controls.** In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

k. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

15

l. **Incorporation of Exhibits.** All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. All Exhibits may be revised prior to the Effective Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

m. **Modifications to the Plan.** The Debtor may amend or modify the Plan and any schedule or supplement hereto, at any time prior to the Effective Date in accordance with the Bankruptcy Code, Bankruptcy Rules or any applicable court order. The Debtor expressly reserves its rights to alter, amend or modify materially the Plan, one or more times, after Confirmation, as provided by section 1193 of the Bankruptcy Code, and, to the extent necessary, may initiate proceedings in the

16

Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

n. **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan or in this Subchapter V Case, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

o. **Notice.** All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed.

17

p. **Reservation of Rights.** The filing of the Plan, any statement or provision contained in the Plan, or the talcing of any action by the Debtor with respect to the Plan, shall not be deemed to be an admission or waiver of any rights of the Debtor with respect to any Holders of Claims against or Equity interests in the Debtor.

q. **No Waiver.** Neither the failure of a Debtor to list a Claim or Equity Interest in the Debtor's Schedules, the failure of a Debtor to object to any Claim, Administrative Claim or Equity Interest for purposes of voting, the failure of a Debtor to object to a Claim, Administrative Claim or Equity Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor or its respective successors, either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a) object to or examine such Claim, Administrative Claim or Equity Interest, in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Claim or Equity Interest.

18

r. **Release of Liens.** The Debtor, Reorganized Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor or Reorganized Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgages, releases or terminations.

s. **Set offs and Counter claims.** No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to set off a Claim against an obligation to the Debtor or Reorganized Debtor arising in connection with a different contract. Unless expressly asserted in this Subchapter V Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to this Plan.

t. **11 U.S.C. §1129 (a)(5) Provision-** The Debtor's insider is Jose Alberto Pimental. The total gross pay for Mr. Pimental shall not exceed $90,000 for any given year over the life of the plan.

19

WHEREFORE the Debtor prays for entry of an order confirming this plan.

Respectfully submitted,

Dated: 5/5/26

/s/   George E. Jacobs
 George E. Jacobs (P36888)
2425 S. Linden Rd., Ste. C
Flint, MI 48532
(810) 720-4333
george@bklawoffice.com

20

# EXHIBIT A

## LIQUIDATION ANALYSIS

### A. Introduction

Under the "best interests of creditors" test set· forth in section 1 129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest, who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtor has prepared the following hypothetical Liquidation Analysis. The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of the Debtor's assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement.

### B. Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of and hypothetical proceeds from the liquidation of the Debtor's assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business,

economic, and competitive uncertainties and contingencies beyond the control of the Debtor, and his advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor were to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.

**NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.**

B. Notes Applicable to the Liquidation Analysis

1.Appointment of a Chapter 7 Trustee

Pursuant to II U.S.C. §1129(a)(7)(A)(ii), the liquidation value, for purposes of the "best interest of creditors" assessment, is to be made as of the

effective date of the plan. Because this date is unknown at this time, the Debtor has utilized historical financial information, up to the time of the filing of the Chapter 11 Plan of Reorganization. The Debtor expects that at the time of the effective date of its Plan, financial circumstances regarding its asset and liability base will not have significantly changed.

2. Liquidation Value

For the Debtor's interest in personal property, the liquidation values take into account the presumed costs of sale, including sales broker fees of 6 percent for real estate if applicable. Deductions are made following the liquidation chart for Chapter 7 Trustee statutory fees, and an estimate for the fees of the Trustee's professionals. The Debtor did not take into account the value of potential avoidance actions, as the Debtor does not anticipate pursuing any potential avoidance actions. The Debtor does not anticipate pursuing any potential avoidance actions due to the fact that the Debtor believes the defendants would have ordinary course and new value defenses. The Debtor's plan projections and liquidation analysis demonstrate the Debtor's ability to pay unsecured creditors in full over the term of the plan, making the pursuit of avoidance actions unnecessary.

3. Chapter 7 Trustee Fee

It is assumed that a Trustee will receive the sum of the proceeds as set

forth under the liquidation value. The limitations on the Chapter 7 trustee's fees are contained in 11 U.S.C. §326. For purposes of the Liquidation Analysis, the chapter 7 trustee's fees are calculated using the limitations of Section 326 of the Bankruptcy Code and are based upon equity in the property.

# LIQUIDATION ANALYSIS

| Type of Property | Fair market Value | Lien | Equity |
|---|---|---|---|
| Cash on hand | 3750 | 0 | 3750 |
| Inventory | 5,000 | 1,081,000 | 0 |
| Office Equipment | 1500 | 1,081,000 | 0 |
| Machinery & Equipment | 50,000 | 1,081,000 | 0 |
| Liquor license | 50,000 | 0 | 50,000 |
| Land & building | 1,059,000 | 1,100,000 | |

NET RECOVERY TO CHAPTER 7 TRUSTEE            $53,750

LESS CH. 7 TRUSTEE ADMINISTRATION FEES   ($1000)

PRIORITY CLAIMS                                           ($75,000)

LESS CHAPTER 11 ADMINISTRATION EXPENSE ($42,238)

NET TO UNSECURED CREDITORS                    $0.00

Harvest Bank holds a mortgage interest in the real property owned by the debtor as well as a first lien on the personal property owned by the debtor. The City of Oxford holds a first statutory lien on the personal property of the Debtor and Oakland County holds a statutory first lien on the Debtor's real estate.

## PLAN PROJECTION ASSUMPTIONS

1. The Projections attached were generated by the Debtor and counsel. The projections are based on several factors.

    a) The Debtors financial performance in 2025.

    b) The Debtors post petition financial performance (the debtor has been profitable).

    c) The Debtors "best guesses" as to how the business will grow and expand.

2. With regard to those "best guesses" the Debtor took into account:

    a) That the business will change over time. New product and new marketing tools will evolve.

    b) That the Debtor understands inflationary costs and has factored these costs into its numbers.

3. As referenced above the Debtor has been profitable post petition. Pursuant to the monthly operating reports filed with the Court, the Debtors earnings have been in line with the projections attached and funds earned in an amount sufficient to meet the plan obligations as they come due.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                                    Chapter 11

Mexcol Group LLC,                                         Case No. 26-41179

      Debtor.                                      Hon. Mark A. Randon

_____/

## ORDER ESTABLISHING DEADLINES AND PROCEDURES IN THE CASE OF A DEBTOR WHO HAS ELECTED TO HAVE SUBCHAPTER V OF CHAPTER 11 APPLY

After reviewing the schedules and statement of financial affairs and consulting with the debtor and the other parties who appeared at the status conference, the Court concludes that this case is appropriate for the procedures set forth in this order, and establishes the following deadlines, hearing dates, and procedures. The purpose of this order is to expedite the debtor's reorganization and to secure "the just, speedy, and inexpensive determination of [this] case . . . ." Fed. R. Bankr. P. 1001.

1.  **Deadlines and Hearing Dates**. The following deadlines and hearing dates are established:

    a.  The deadline for the debtor to file motions under ¶ 4, below is *April 3, 2026.*

    b.  Under 11 U.S.C. § 1189(b), the deadline for the debtor to file a plan under ¶ 2, below is *May 5, 2026.* Immediately after filing the plan, the debtor must serve the plan, a ballot as appropriate, and this order on the Subchapter V Trustee, the United States Trustee, all creditors, all equity security holders, and all other parties who have requested service, and the debtor then must promptly file proof of such service.

    c.  The deadline to return ballots on the plan, as well as to file objections to confirmation of the plan under ¶ 3, below, is *June 15, 2026.* The completed ballot form must be returned by mail to the debtor's attorney, *George E. Jacobs, 2425 S. Linden Road, Suite C, Flint MI 48532.*

    d.  No later than *June 22, 2026*, the debtor must file a signed ballot summary indicating the ballot count under 11 U.S.C. § 1126(c) & (d). A copy of all ballots must be attached to this summary.

    e.  The hearing on confirmation of the plan will be held IN PERSON on *June 29, 2026, at 11:00 a.m.*

f. The deadline for all professionals to file final fee applications under ¶ 5, below is *30 days after the confirmation order is entered.*

g. The deadline to file objections to this order under ¶ 6, below is *March 30, 2026.*

h. The deadline for the debtor to file a motion to extend the deadline to file a plan under ¶ 7, below is *April 3, 2026.*

i. These dates and deadlines are subject to change upon notice if the debtor files a plan before the deadline in paragraph b, above.

2. **The Plan.** The debtor must begin to negotiate the terms of a plan of reorganization as soon as practicable. By the deadline established in paragraph 1b, above, the debtor must file a plan of reorganization. If the debtor fails to meet this deadline, the case may be dismissed or converted to chapter 7 under 11 U.S.C. § 1112(b)(4).

3. **The Confirmation Hearing.** Parties may file objections to confirmation of the plan by the deadline established in paragraph 1c above. Objections must be served on the attorney for the debtor, the Subchapter V Trustee, and the United States Trustee. A proof of such service must be filed with the objections. Objections which are not timely filed and served will be deemed waived.

4. **Expediting the Debtor's Reorganization.** If necessary to file a plan by the deadline established in this order, the debtor must file any motions or requests to value security pursuant to L.B.R 9014-1 by the deadline established in paragraph 1a, above.

5. **Fee Applications.** Unless the Court orders otherwise, each professional may file one and only one final fee application. Such applications shall be filed pursuant to L.B.R. 2016-1 and L.B.R. 9014-1 by the deadline set forth in paragraph 1f, above.

6. **Deadline to File Objections to this Order.** Any objections to this order must be filed by the deadline set forth in paragraph 1g, above. Objections not timely filed are waived.

7. **Motions to Extend the Deadline to File a Plan.** Any motion to extend the deadline to file a plan must be filed by the deadline in paragraph 1h, above. The motion must demonstrate by affidavit or otherwise that the deadline extension is needed, and that the need for the deadline extension is attributable to circumstances for which the debtor should not justly be held accountable. *See* 11 U.S.C. § 1189(b). The Court may schedule a hearing. Counsel for the debtor must serve the motion and any notice of the hearing on the Subchapter V Trustee,

- 2 -

the United States Trustee, all secured creditors, and the 20 largest unsecured creditors, and must file a proof of service.

**Signed on March 11, 2026**



/s/ **Mark A. Randon**

**Mark A. Randon**
**United States Bankruptcy Judge**

- 3 -

# UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

In Re: Mexcol Group LLC

Case no. 26-41179
Ch. 11
Judge: Mark A. Randon

Debtor.

_____/

## CLASS [ ] BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION

**Bankruptcy Law Office filed an Amended Plan of Reorganization dated 5/7/2026 (the "Plan") for the Debtor in this case.**

**You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Bankruptcy Law Office, 2425 S. Linden Rd., Ste. C, Flint, MI 48532, on or before June 15, 2026 and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

### ACCEPTANCE OR REJECTION OF THE PLAN

*(Check one box only)*

[ ] ACCEPTS THE PLAN                    [ ] REJECTS THE PLAN

Dated:_____         Print or type name:

                         Signature:

                         Address: _____

                         _____

                         _____

RETURN THIS BALLOT TO:
Bankruptcy Law Office
George E. Jacobs
2425 S. Linden Rd., Ste. C
Flint, MI 48532

# MEXCOL GROUP, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JUNE 2026**

|  | Jun-26 |
|---|---|
| **INCOME** | |
| GROSS SALES | 81,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 36,400.00 |
| **TOTAL GROSS INCOME:** | $44,600.00 |
| **EXPENSES** | |
| INSURANCE | 1,000.00 |
| UTILITIES | 2,500.00 |
| PAYROLL | 16,500.00 |
| PAYROLL TAX | 3,000.00 |
| MAINTENANCE | 500.00 |
| OFFICE SUPPLIES | 100.00 |
| REPAIRS / PARTS | 250.00 |
| LICENSES / PERMITS | 250.00 |
| SALES USE TAX | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 |
| BANK FEES | 100.00 |
| MISCELLANEOUS | 1,000.00 |
| **TOTAL EXPENSES:** | $31,000.00 |
| **NET INCOME:** | $13,600.00 |
| **PLAN PAYMENT:** | $0.00 |
| **NET CASH ON HAND:** | $13,600.00 |

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JULY 2026 - DECEMBER 2026

|  | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 |
|---|---|---|---|---|---|---|
| **INCOME** |  |  |  |  |  |  |
| GROSS SALES | 81,000.00 | 81,000.00 | 76,000.00 | 76,000.00 | 76,000.00 | 86,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 36,400.00 | 36,400.00 | 33,750.00 | 33,750.00 | 33,750.00 | 38,250.00 |
| **TOTAL GROSS INCOME:** | $44,600.00 | $44,600.00 | $42,250.00 | $42,250.00 | $42,250.00 | $47,750.00 |
| **EXPENSES** |  |  |  |  |  |  |
| INSURANCE | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 17,500.00 | 17,500.00 | 17,500.00 | 17,500.00 | 17,500.00 | 17,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $32,200.00 | $32,200.00 | $32,200.00 | $32,200.00 | $32,200.00 | $32,200.00 |
| **NET INCOME:** | $12,400.00 | $12,400.00 | $10,050.00 | $10,050.00 | $10,050.00 | $15,550.00 |
| **PLAN PAYMENT:** | $0.00 | $3,000.00 | $12,608.00 | $12,608.00 | $12,608.00 | $12,608.00 |
| **NET CASH ON HAND:** | **$26,000.00** | **$35,400.00** | **$32,842.00** | **$30,284.00** | **$27,726.00** | **$30,668.00** |

1000

# MEXCOL GROUP, LLC
## PROJECTIONS OF INCOME & EXPENSE
### JANUARY 2027 - JUNE 2027

|  | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 71,000.00 | 66,000.00 | 76,000.00 | 76,000.00 | 81,000.00 | 83,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 29,000.00 | 26,750.00 | 31,250.00 | 31,250.00 | 31,500.00 | 34,400.00 |
| **TOTAL GROSS INCOME:** | $42,000.00 | $39,250.00 | $44,750.00 | $44,750.00 | $49,500.00 | $48,600.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 17,500.00 | 17,500.00 | 17,500.00 | 17,500.00 | 17,500.00 | 17,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $32,100.00 | $32,100.00 | $32,100.00 | $32,100.00 | $32,100.00 | $32,100.00 |
| **NET INCOME:** | $9,900.00 | $7,150.00 | $12,650.00 | $12,650.00 | $17,400.00 | $16,500.00 |
| **PLAN PAYMENT:** | $12,608.00 | $11,608.00 | $11,608.00 | $11,608.00 | $11,608.00 | $14,734.00 |
| **NET CASH ON HAND:** | **$27,960.00** | **$23,502.00** | **$24,544.00** | **$25,586.00** | **$31,378.00** | **$33,144.00** |

26-41179-mar   Doc 46   Filed 05/07/26   Entered 05/07/26 09:07:19   Page 33 of 43

# MEXCOL GROUP, LLC
## PROJECTIONS OF INCOME & EXPENSE
### JULY 2027 - DECEMBER 2027

|  | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 |
|---|---|---|---|---|---|---|
| **INCOME** |  |  |  |  |  |  |
| GROSS SALES | 83,000.00 | 83,000.00 | 76,000.00 | 81,000.00 | 81,000.00 | 88,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 35,900.00 | 35,900.00 | 36,350.00 | 36,350.00 | 36,350.00 | 38,150.00 |
| **TOTAL GROSS INCOME:** | $47,100.00 | $47,100.00 | $39,650.00 | $44,650.00 | $44,650.00 | $49,850.00 |
| **EXPENSES** |  |  |  |  |  |  |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 18,500.00 | 18,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $33,300.00 | $33,300.00 | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 |
| **NET INCOME:** | $13,800.00 | $13,800.00 | $5,350.00 | $10,350.00 | $10,350.00 | $15,550.00 |
| **PLAN PAYMENT:** | $11,608.00 | $11,608.00 | $14,734.00 | $11,608.00 | $11,608.00 | $14,734.00 |
| **NET CASH ON HAND:** | **$35,336.00** | **$37,528.00** | **$28,144.00** | **$26,886.00** | **$25,628.00** | **$26,444.00** |

1000

# MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
JANUARY 2028 - JUNE 2028

|  | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 73,000.00 | 68,000.00 | 76,000.00 | 79,000.00 | 82,000.00 | 84,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 31,900.00 | 29,650.00 | 34,600.00 | 34,600.00 | 35,950.00 | 36,850.00 |
| **TOTAL GROSS INCOME:** | $41,100.00 | $38,350.00 | $41,400.00 | $44,400.00 | $46,050.00 | $47,150.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 18,500.00 | 17,500.00 | 18,500.00 | 18,500.00 | 18,500.00 | 18,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $33,200.00 | $32,200.00 | $33,200.00 | $33,200.00 | $33,200.00 | $33,200.00 |
| **NET INCOME:** | $7,900.00 | $6,150.00 | $8,200.00 | $11,200.00 | $12,850.00 | $13,950.00 |
| **PLAN PAYMENT:** | $11,608.00 | $11,608.00 | $14,734.00 | $11,608.00 | $11,608.00 | $14,734.00 |
| **NET CASH ON HAND:** | **$22,736.00** | **$17,278.00** | **$10,744.00** | **$10,336.00** | **$11,578.00** | **$10,794.00** |

Entered 05/07/26 09:07:19    Filed 05/07/26    Doc 46    26-41179-mar

# MEXCOL GROUP, LLC
## PROJECTIONS OF INCOME & EXPENSE
### JULY 2028 - DECEMBER 2028

| | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 84,000.00 | 84,000.00 | 76,000.00 | 81,000.00 | 81,000.00 | 90,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 37,350.00 | 37,350.00 | 36,000.00 | 36,000.00 | 36,000.00 | 40,050.00 |
| **TOTAL GROSS INCOME:** | $46,650.00 | $46,650.00 | $40,000.00 | $45,000.00 | $45,000.00 | $49,950.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 |
| **NET INCOME:** | $12,350.00 | $12,350.00 | $5,700.00 | $10,700.00 | $10,700.00 | $15,650.00 |
| **PLAN PAYMENT:** | $11,608.00 | $11,608.00 | $13,234.00 | $10,108.00 | $10,108.00 | $13,234.00 |
| **NET CASH ON HAND:** | **$11,536.00** | **$12,278.00** | **$4,744.00** | **$5,336.00** | **$5,928.00** | **$8,344.00** |

1000

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
### JANUARY 2029 - JUNE 2029

|  | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 90,000.00 | 88,000.00 | 88,000.00 | 86,000.00 | 86,000.00 | 86,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 33,300.00 | 31,050.00 | 37,350.00 | 37,350.00 | 37,350.00 | 38,250.00 |
| **TOTAL GROSS INCOME:** | $56,700.00 | $56,950.00 | $50,650.00 | $48,650.00 | $48,650.00 | $47,750.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 |
| **NET INCOME:** | $22,400.00 | $22,650.00 | $16,350.00 | $14,350.00 | $14,350.00 | $13,450.00 |
| **PLAN PAYMENT:** | $10,108.00 | $10,108.00 | $13,234.00 | $10,108.00 | $10,108.00 | $13,234.00 |
| **NET CASH ON HAND:** | **$20,636.00** | **$33,178.00** | **$36,294.00** | **$40,536.00** | **$44,778.00** | **$44,994.00** |

1000

# MEXCOL GROUP, LLC
## PROJECTIONS OF INCOME & EXPENSE
### JULY 2029 - DECEMBER 2029

|  | Jul-29 | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 84,000.00 | 84,000.00 | 82,000.00 | 82,000.00 | 82,000.00 | 82,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 38,256.00 | 38,850.00 | 36,900.00 | 36,900.00 | 36,900.00 | 40,500.00 |
| **TOTAL GROSS INCOME:** | $45,744.00 | $45,150.00 | $45,100.00 | $45,100.00 | $45,100.00 | $41,500.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 | $34,300.00 |
| **NET INCOME:** | $11,444.00 | $10,850.00 | $10,800.00 | $10,800.00 | $10,800.00 | $7,200.00 |
| **PLAN PAYMENT:** | $10,108.00 | $10,108.00 | $13,234.00 | $10,108.00 | $10,108.00 | $13,234.00 |
| **NET CASH ON HAND:** | **$46,330.00** | **$47,072.00** | **$44,638.00** | **$45,330.00** | **$46,022.00** | **$39,988.00** |

1000

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JANUARY 2030 - JUNE 2030

|  | Jan-30 | Feb-30 | Mar-30 | Apr-30 | May-30 | Jun-30 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 77,000.00 | 76,000.00 | 76,000.00 | 79,000.00 | 79,000.00 | 79,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 34,200.00 | 32,850.00 | 37,350.00 | 37,350.00 | 37,350.00 | 38,700.00 |
| **TOTAL GROSS INCOME:** | $42,800.00 | $43,150.00 | $38,650.00 | $41,650.00 | $41,650.00 | $40,300.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $34,400.00 | $34,400.00 | $34,400.00 | $34,400.00 | $34,400.00 | $34,400.00 |
| **NET INCOME:** | $8,400.00 | $8,750.00 | $4,250.00 | $7,250.00 | $7,250.00 | $5,900.00 |
| **PLAN PAYMENT:** | $10,108.00 | $10,108.00 | $13,234.00 | $10,108.00 | $10,108.00 | $13,234.00 |
| **NET CASH ON HAND:** | **$38,280.00** | **$36,922.00** | **$27,938.00** | **$25,080.00** | **$22,222.00** | **$14,888.00** |

1000

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JULY 2030 - DECEMBER 2030

| | Jul-30 | Aug-30 | Sep-30 | Oct-30 | Nov-30 | Dec-30 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 81,000.00 | 81,000.00 | 82,000.00 | 82,000.00 | 85,000.00 | 85,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 38,700.00 | 38,700.00 | 37,350.00 | 37,350.00 | 37,350.00 | 40,500.00 |
| **TOTAL GROSS INCOME:** | $42,300.00 | $42,300.00 | $44,650.00 | $44,650.00 | $47,650.00 | $44,500.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $34,400.00 | $34,400.00 | $34,400.00 | $34,400.00 | $34,400.00 | $34,400.00 |
| **NET INCOME:** | $7,900.00 | $7,900.00 | $10,250.00 | $10,250.00 | $13,250.00 | $10,100.00 |
| **PLAN PAYMENT:** | $10,108.00 | $10,108.00 | $13,234.00 | $10,108.00 | $10,108.00 | $13,234.00 |
| **NET CASH ON HAND:** | **$12,680.00** | **$10,472.00** | **$7,488.00** | **$7,630.00** | **$10,772.00** | **$7,638.00** |

# MEXCOL GROUP, LLC

## PROJECTIONS OF INCOME & EXPENSE

### JANUARY 2031 - JUNE 2031

| | Jan-31 | Feb-31 | Mar-31 | Apr-31 | May-31 | Jun-31 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 84,000.00 | 84,000.00 | 85,000.00 | 85,000.00 | 85,000.00 | 85,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 37,800.00 | 37,800.00 | 38,000.00 | 38,000.00 | 38,000.00 | 39,150.00 |
| | | | | | | |
| **TOTAL GROSS INCOME:** | $46,200.00 | $46,200.00 | $47,000.00 | $47,000.00 | $47,000.00 | $45,850.00 |
| | | | | | | |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | | | | | | |
| **TOTAL EXPENSES:** | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 |
| | | | | | | |
| **NET INCOME:** | $11,700.00 | $11,700.00 | $12,500.00 | $12,500.00 | $12,500.00 | $11,350.00 |
| | | | | | | |
| **PLAN PAYMENT:** | $10,108.00 | $10,108.00 | $13,234.00 | $10,108.00 | $10,108.00 | $12,234.00 |
| | | | | | | |
| **NET CASH ON HAND:** | **$9,230.00** | **$10,822.00** | **$10,088.00** | **$12,480.00** | **$14,872.00** | **$13,988.00** |

26-41179-mar   Doc 46   Filed 05/07/26   Entered 05/07/26 09:07:19

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JULY 2031 - DECEMBER 2031

| | Jul-31 | Aug-31 | Sep-31 | Oct-31 | Nov-31 | Dec-31 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 85,000.00 | 84,000.00 | 84,000.00 | 83,000.00 | 83,000.00 | 85,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 39,150.00 | 39,150.00 | 39,150.00 | 39,150.00 | 41,000.00 | 40,950.00 |
| **TOTAL GROSS INCOME:** | $45,850.00 | $44,850.00 | $44,850.00 | $43,850.00 | $42,000.00 | $44,050.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 |
| **NET INCOME:** | $11,350.00 | $10,350.00 | $10,350.00 | $9,350.00 | $7,500.00 | $9,550.00 |
| **PLAN PAYMENT:** | $10,108.00 | $10,108.00 | $13,234.00 | $10,108.00 | $10,108.00 | $13,234.00 |
| **NET CASH ON HAND:** | $15,230.00 | $15,472.00 | $12,588.00 | $11,830.00 | $9,222.00 | $5,538.00 |

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JANUARY 2032 - JUNE 2032

| | Jan-32 | Feb-32 | Mar-32 | Apr-32 | May-32 | Jun-32 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 86,000.00 | 86,000.00 | 87,000.00 | 87,000.00 | 88,000.00 | 89,000.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 40,950.00 | 41,000.00 | 42,000.00 | 42,500.00 | 42,500.00 | 43,000.00 |
| **TOTAL GROSS INCOME:** | $45,050.00 | $45,000.00 | $45,000.00 | $44,500.00 | $45,500.00 | $46,000.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **TOTAL EXPENSES:** | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 | $34,500.00 |
| **NET INCOME:** | $10,550.00 | $10,500.00 | $10,500.00 | $10,000.00 | $11,000.00 | $11,500.00 |
| **PLAN PAYMENT:** | $10,108.00 | $10,108.00 | $13,234.00 | $10,108.00 | $10,108.00 | $13,234.00 |
| **NET CASH ON HAND:** | $5,980.00 | $6,372.00 | $3,638.00 | $3,530.00 | $4,422.00 | $2,688.00 |