# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re: Mexcol Group LLC,

        Debtor.

Case No.26-41179
Chapter 11
Judge: Mark A. Randon

_____/

## SECOND AMENDED
### PLAN OF REORGANIZATION

Mexcol Group LLC (the "Debtor") proposes this second amended plan of reorganization (the "Plan") through its undersigned counsel. This proposed plan of reorganization is subject to Bankruptcy Court approval and is for the resolution of outstanding claims against and interests in the Debtor pursuant to Chapter 11 of Title 11 of the United States Code (the "Code").

### A. Description of the Debtor

The Debtor owns and operates a Mexican restaurant in Oxford, Michigan. The Debtor's owner is Jose Alberto Pimental. Mr. Pimental has operated out of this location since 2016. The Debtor's owner, Jose Albero Pimental bought the building in 2023 and leases it to the Debtor. The Debtor employs between 9-20 people at any given time depending on the time of year as May through December are its busiest times.

1

**B. <u>Causes of the Bankruptcy Filing</u>**

Prior to the filing of this case the debtor's principal operated several restaurants besides this location. The operation of multiple locations resulted in the Debtor being under capitalized. In addition, the debtor's principal was unable to spend the necessary hours at each location, and they all suffered. This under capitalization caused the debtor to look to nonconforming lenders for needed capital. When the debtor could no longer meet these obligations it filed this case.

**C. <u>Post Petition Litigation</u>**

Post petition certain things have happened which have impacted the Debtor and impact this plan:

1. The Debtor filed its first day motions for use of cash collateral and for the payment of wages. These motions were approved by the Court in the ordinary course.

2. The Debtor retained the undersigned counsel.

**D. <u>Post Petition Activity</u>**

1. The Debtor has been profitable post petition. It has increased its marketing efforts and worked to limit its costs.

2. The Debtor has worked with counsel, creditors, and the SubChapter V Trustee Kimberly Clayson in preparing this plan and negotiating with creditors.

2

## E. Post Petition Financial Performance

As indicated above, post petition the Debtor has taken steps to improve its bottom line, to limit its food costs, to fine tune employee costs and to attract new customers. These changes support the financial projections prepared by the Debtor and attached to this plan. These changes have also resulted in profitability for the Debtor post petition. This profitability is in line with the projections prepared by the Debtor and attached hereto.

## F. Liquidation Analysis.

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**. In a liquidation, Debtors estimate a total of zero would be available to general unsecured creditors after deductions for liquidation costs, trustee fees and costs, as well as secured and priority claims. The Debtor is offering a $20,000 dividend to its general unsecured creditors over the life of the plan; a $20,000 increase over what they would receive should the case convert to Chapter 7.

3

### G. Financial Projection

The Debtor has provided projected financial projections as **Exhibit "B"**.

The Debtors financial projections show that the Debtor will have projected

disposable income (as defined by § 1191(d) of the Bankruptcy Code) in an

amount sufficient to meet the requirements of this Plan.

## ARTICLE 1 SUMMARY OF CLAIMS AND CLASSES

**This Plan provides for the following classes and claims:**

**Group 1:** Estimated Administrative Expense claims pursuant to 11 U.S.C.

| | |
|---|---|
| §507:Subchapter V Trustee fees: | $8000 |
| Debtor's Chapter 11 counsel fees + expenses: | $45,000 |
| Less Retainer Deposit: | ($5762) |
| Estimated Admin Expenses Due from Debtor: | $47,238 |

**Class 1: Priority Claim of the State of Michigan**

The State of Michigan has filed a priority claim for $165,782.45. The Debtor disputes

this claim and believes the actual claim is $112,236.29. The Debtor is working with the

State of Michigan on the resolution of its claim and anticipates that an amended claim will

be filed by the State of Michigan shortly.

4

**Class 2: Secured Claim of Harvest Small Business Finance LLC**

Harvest is a secured creditor of the Debtor. It holds an interest in the Debtor's personal property and holds a mortgage on the property leased to the Debtor as its business premises. Harvest alleges a total debt owed by the Debtor in the amount of $1,814,754.95. Of this amount, the secured claim of Harvest, as owed by the Debtor, is $110,250.

**Class 3 Secured Claim of State of Michigan**

The State of Michigan has filed a secured claim in the amount of $75,136.93. It is the position of the Debtor that this claim is wholly unsecured as there is no collateral to support this claim.

**Class 4: Unsecured Creditors**

This class consists of those creditors listed on Schedule E/F who have not filed claims, the unsecured portions of those creditors who allege secured claims and those creditors who have filed unsecured claims. The total amount of unsecured debt totals $2,490,404.

**ARTICLE 2 TREATMENT OF CLASSES OF CLAIMS**

**Group 1 Administrative Expense claims pursuant to 11 U.S.C. §507**

This class is Impaired.

Subchapter V Trustee fees of approximately $8000. The fees of the Subchapter V Trustee shall be paid $3000 upon any order approving her fees and in monthly installments of $1,000 thereafter with the first monthly payment due 30 days from any order approving

5

same. Debtor's Chapter 11 Counsel fees total approximately $39,238 (net of retainer). The fees of counsel will be paid $10,000 upon confirmation and the balance at a rate of $1500 per month until paid in full with the first payment 30 days from any order approving same. This proposed distribution is subject to increase if the Debtor incurs additional administrative expenses including but not limited to expert witness expenses, additional attorney fees to promote confirmation of a contested plan and additional Subchapter V Trustee fees necessary to promote confirmation of this plan and/or to mediate plan confirmation by consent. Any increase in administrative expenses will be paid from the amounts the Debtor estimates for disbursement to Class 5 general unsecured creditors.

**Class 1: Priority Claim of the State of Michigan**

This class is not impaired as the treatment of the claims of the State of Michigan is within the parameters of the code. The State of Michigan will be paid over 60 months at 8.66% with the first payment of $2312 due 90 days from the date of the Order Confirming Plan.

**Class 2: Harvest Small Business Finance LLC**

This class is impaired.

The treatment of the claim of Harvest is as follows:

A. Harvest has a total claim of $1,814,754. Of that claim the Debtor owes Harvest a secured claim of $110,250 and a general unsecured claim of $1,704,504.

B. Harvest shall be paid its secured claim of $110,250 over a 60 month period At 9.75% in monthly installments of $2346 with the first payment due 90 days from confirmation.

C. Harvest's unsecured claim of $1,704,504 shall be treated as all other general unsecured claims are treated as set forth in Class 5.

D. This plan shall incorporate the terms of the loan agreement and loan documents between the parties and the Debtor ratifies and confirms those documents without modification unless specifically modified in this plan of reorganization.

E. This plan and any Order Confirming Plan entered by the Court shall not act as a stay nor modify in any way of Harvest's rights against any co-borrower or guarantor as to the claims of Harvest either pre or post confirmation.

F. The treatment to Harvest set forth in this claim shall incorporate the language and treatment of this plan at Article 4 Executory Contracts and Unexpired Leases.

G. Harvest shall retain its liens and shall have right, upon reasonable notice, to inspect its collateral.

**Class 3:** **State of Michigan**

The class is impaired. It is the position of the Debtor that the Class 4 secured claim of the State of Michigan is wholly unsecured and as such will receive no payment under this plan.

**Class 4:** **Allowed Unsecured Creditors**

This Class is impaired. General unsecured claims: $2,490,404.

Unsecured creditors shall share in sum total of $20,000 over the life of the plan.

These funds shall be paid quarterly with the first of 16 quarterly payments of

$1250 due 12 months from confirmation with each creditor paid on a prorata basis.

## ARTICLE 3 ALLOWANCE AND DISALLOWANCE OF CLAIMS

a. **Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor hasscheduled such claim as disputed, contingent, or unliquidated.

b. **Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 4 EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor assumes its lease with its owner, Jose Alberto Pimental for the lease of its business premises located at 21 S. Washington St., Oxford, Michigan. The lease terms are triple net meaning that the Debtor is responsible for the taxes, insurance and maintenance. The Debtor acknowledges that its business premises, owned by its Jose Alberto Pimental, is mortgaged to Harvest Small Business Finance, LLC. The Debtor further acknowledges its current obligation pursuant to its lease to pay rent is in

8

the amount of $11,000. The Debtor further acknowledges:

1. That the balance owed on the mortgage note as of June 2, 2026 is $1,179,670.80 per the proof of claim filed by Harvest.

2. That it is its obligation to keep the property insured with Harvest as the loss payee, to pay the taxes as they come due and to maintain the premises as required by law.

## ARTICLE 5 DISCHARGE

On the confirmation date of this Plan, if deemed consensual confirmation, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (a) imposed by this Plan; (b) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c)of the; or (c) of a kind specified in § 1141(d)(6)(B). In the event that this Plan is confirmed as a non-consensual plan, Debtor shall beeligible to receive a discharge under § 1192 of the Bankruptcy Code upon payment in full of the sums required under this Plan and application to the Court.

## ARTICLE 6 PLAN PROPOSED IN GOOD FAITH

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

9

## ARTICLE 7 RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputesas to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be setforth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

## ARTICLE 8 LIQUIDATION ANALYSIS

The Debtor's Liquidation Analysis is attached as **Exhibit "A"**. The Debtor believes unsecured creditors would receive no dividend upon liquidation and Chapter 7 and Chapter 11 administrative expense claims and after the payment of secured claims.

10

and priority claims. The Debtor proposes paymentof $20,000 to unsecured creditors; a $20,000 improvement over what Debtor estimates recovery would be in a Chapter 7. All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potentialrecoveries are based on good faith estimates using information currently availableto the Debtor. The estimates have not been subject to audit or appraisal. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time. Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition, reflect the Debtor's best estimate of the market value of its assets, except where noted to the contrary. In establishing the values, Debtor has considered the size, age,physical condition and location of the assets.

## ARTICLE 9 PLAN IMPLEMENTATION

a. **Plan projections**. The Debtor has attached as **Exhibit "B"**, its summary of post-confirmation financial projections for the life of the Plan. These projections are based on:

1. The Debtor's post petition performance.
2. The changes to its business made by the Debtor.
3. The Debtor's knowledge of the industry and this market.

## b. Voting and Acceptance of the Plan.

b.1 Debtor will only count ballots timely returned by impaired creditors.

b.2 If Debtor receives votes in an impaired creditor class, the plan shall be deemed accepted and confirmed by consent of the creditors if the ballots receivedin favor of the plan comprise a simple majority and two-thirds in dollar amount.

b.3 If no ballots are received or if an insufficient number of creditors votein favor of the plan the Debtor may confirm the plan as a nonconsensual plan.

c. **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

d. **Confirmation**

a.1. If the Plan is confirmed under section 1191(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code section 1183 through Substantial Consummation of the Plan at which point his services shall terminate.

a.2. If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until the Trustee has performed such duties as are described in sections 1183 and 1194(b) and such other duties as he

12

may have been assigned by the Bankruptcy Court prior to the Effective Date.

e. **Pre-Effective Date Injunctions or Stays.** All injunctions or stays,

whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

f. **Avoidance Actions.** Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to the Reorganized Debtor. The Debtor does not at this time anticipate the filing of any avoidance action.

g. **Preference.** As of the date of the filing of this plan the Debtor does not have any preference actions.

h. **Change of Address.** In order to ensure that it receives its distribution, each Creditor holding an Allowed Claim must advise the Reorganized Debtor of any change in address. Absent any such notification, the Reorganized Debtor or Subchapter V Trustee, as applicable, shall send payments to the address listed on the Matrix on file with the Bankruptcy Court.

13

i. **Vesting of Property.** Title to all property of the Debtor shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as Debtor and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan. In the event this case is converted to a Chapter 7, all property of the Debtor and reorganized debtor will revest in the estate.

j. **Monthly Reports.** The Debtor will remain responsible for filing timely Monthly Operating Reports until this case is confirmed, dismissed or converted to Chapter 7.

k. **Compromise of Litigation.** The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action) available to the Debtor, the Estate, the Debtor-in- Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

## ARTICLE 10 MISCELLANEOUS PROVISIONS

a. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

14

b. **Effective Date of Plan.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

c. **Severability**. If any provision in this Plan is determined to be unenforceable, determination will in no way limit or affect the enforceability and operative effectof any other provision of this Plan.

d. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

e. **Appendices.** The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

f. **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

g. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Michigan govern this Plan and any agreements, documents,

15

and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

h. **Corporate Governance.** Not applicable where this is an individual debtor.

i. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

j. **Confirmation Order Controls.** In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

k. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

l. **Incorporation of Exhibits.** All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's

16

website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. All Exhibits may be revised prior to the Effective Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

m. **Modifications to the Plan.** The Debtor may amend or modify the Plan and any schedule or supplement hereto, at any time prior to the Effective Datein accordance with the Bankruptcy Code, Bankruptcy Rules or any applicable court order. The Debtor expressly reserves its rights to alter, amend or modify materially the Plan, one or more times, after Confirmation, as provided by section 1193 of the Bankruptcy Code, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if

the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Equity Interestof such Holder.

n. **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan or in this Subchapter V Case, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction byany other court having competent jurisdiction with respect to such matter.

o. **Notice.** All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein,shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed.

p. **Reservation of Rights.** The filing of the Plan, any statement or provision contained in the Plan, or the talcing of any action by the Debtor with respect tothe Plan, shall not be deemed to be an admission or waiver of any rights ofthe Debtor with respect to any Holders of Claims against or Equity interests intheDebtor.

q. **No Waiver.** Neither the failure of a Debtor to list a Claim or Equity Interest in the Debtor's Schedules, the failure of a Debtor to object to any

18

Claim, Administrative Claim or Equity Interest for purposes of voting, the failure of a Debtor to object to a Claim, Administrative Claim or Equity Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor or its respective successors, either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a) object to or examine such Claim, Administrative Claim or Equity Interest,in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Claim or Equity Interest.

r. **Release of Liens.** The Debtor, Reorganized Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan.

19

s. **1191 (c)(3) Provision-** For purposes of satisfying the obligations of the Debtor under section 1191 (c)(3) the Debtor proposes should the Debtor default in the payment to a creditor, that creditor shall have the right to make a written demand of the Debtor outlining the nature and amount of the default by notifying the Debtor and Debtor's counsel. The Debtor shall have 30 days to cure the default or make other mutually agreeable arrangements with the Debtor. Should the Debtor not cure the default, the affected creditor shall have the right to seek to reopen the case to seek appropriate remedies.

WHEREFORE the Debtor prays for entry of an order confirming this plan.

Respectfully submitted,

Dated: 6/26/26

/s/ George E. Jacobs
George E. Jacobs (P36888)
2425 S. Linden Rd., Ste. C
Flint, MI 48532
(810) 720-4333
george@bklawoffice.com

20

# EXHIBIT A

## LIQUIDATION ANALYSIS

a. Introduction

Under the "best interests of creditors" test set· forth in section 1 129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest, who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtor has prepared the following hypothetical Liquidation Analysis. The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of the Debtor's assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement.

## B. Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of and hypothetical proceeds from the liquidation of the Debtor's assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business,

economic, and competitive uncertainties and contingencies beyond the control of the Debtor, and his advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor were to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.

**NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.**

b. Notes Applicable to the Liquidation Analysis

1. Appointment of a Chapter 7 Trustee

Pursuant to II U.S.C. §1129(a)(7)(A)(ii), the liquidation value, for purposes of the "best interest of creditors" assessment, is to be made as of the effective date of the plan. Because this date is unknown at this time, the Debtor has utilized historical financial information, up to the time of the filing of the Chapter 11 Plan of Reorganization. The Debtor expects that at the time of the effective date of its Plan, financial circumstances regarding its asset and

liabilitybase will not have significantly changed.

2. Liquidation Value

For the Debtor's interest in personal property, the liquidation values take into account the presumed costs of sale, including sales broker fees of 6 percent for real estate if applicable. Deductions are made following the liquidation chart for Chapter 7 Trustee statutory fees, and an estimate for the fees of the Trustee's professionals. The Debtor did not take into account the value of potential avoidance actions, as the Debtor does not anticipate pursuing any potential avoidance actions. The Debtor does not anticipate pursuing any potential avoidance actions due to the fact that the Debtor believes the defendants would have ordinary course and new value defenses. The Debtor's plan projections and liquidation analysis demonstrate the Debtor's ability to pay unsecured creditors in full over the term of the plan, making the pursuit of avoidance actions unnecessary.

3. Chapter 7 Trustee Fee

It is assumed that a Trustee will receive the sum of the proceeds as set forthunder the liquidation value. The limitations on the Chapter 7 trustee's fees are contained in 11 U.S.C. §326. For purposes of the Liquidation Analysis, the chapter 7 trustee's fees are calculated using the limitations of Section 326 of the Bankruptcy Code and are based upon equity in the property.

# LIQUIDATION ANALYSIS

| Type of Property | Fair market Value | Lien | Equity |
|---|---|---|---|
| Cash on hand | 3750 | 0 | 3750 |
| Inventory | 5,000 | *1,825,754 | 0 |
| Office Equipment | 1500 | *1,825,754 | 0 |
| Machinery & Equipment | 50,000 | *1,825,754 | 0 |
| Liquor license | 50,000 | *1,825,754 | 0 |

NET RECOVERY TO CHAPTER 7 TRUSTEE $3,750

LESS CH. 7 TRUSTEE ADMINISTRATION FEES ($1000)

PRIORITY CLAIMS ($112,237)

LESS CHAPTER 11 ADMINISTRATION EXPENSE ($42,238)

NET TO UNSECURED CREDITORS $0.00

*Harvest Bank holds a mortgage interest in the real property owned by the debtor's principal Jose Alberto Pimental as well as a first lien on the personal property owned by the debtor including the liquor license.

## PLAN PROJECTION ASSUMPTIONS

1. The Projections attached were generated by the Debtor and counsel. The projections are based on several factors.

   a) The Debtors financial performance in 2025.

   b) The Debtors post petition financial performance (the debtor has been profitable).

   c) The Debtors "best guesses" as to how the business will grow and expand.

2. With regard to those "best guesses" the Debtor took into account:

   a) That the business will change over time. New product and new marketing tools will evolve.

   b) That the Debtor understands inflationary costs and has factored these costs into its numbers.

3. As referenced above the Debtor has been profitable post petition. Pursuant to the monthly operating reports filed with the Court, the Debtors earnings have been in line with the projections attached and funds earned in an amount sufficient to meet the plan obligations as they come due.

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
### JUNE 2026

| | Jun-26 |
|---|---|
| **INCOME** | |
| GROSS SALES | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 48,888.00 |
| **TOTAL GROSS INCOME:** | $57,612.00 |
| | |
| **EXPENSES** | |
| INSURANCE | 1,000.00 |
| UTILITIES | 2,500.00 |
| PAYROLL | 18,000.00 |
| PAYROLL TAX | 3,000.00 |
| MAINTENANCE | 500.00 |
| OFFICE SUPPLIES | 100.00 |
| REPAIRS / PARTS | 250.00 |
| LICENSES / PERMITS | 250.00 |
| SALES USE TAX | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 |
| BANK FEES | 100.00 |
| LEASE PAYMENT | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 |
| **TOTAL EXPENSES:** | $45,550.00 |
| **NET INCOME:** | $12,062.00 |
| **PLAN PAYMENT:** | $0.00 |
| **NET CASH ON HAND:** | **$12,062.00** |

26-41179-mar   Doc 63   Filed 06/26/26   Entered 06/26/26 09:50:49   Page 27 of 40

# MEXCOL GROUP, LLC

## PROJECTIONS OF INCOME & EXPENSE

### JULY 2026 - DECEMBER 2026

|  | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 106,500.00 | 106,500.00 | 96,500.00 | 96,500.00 | 96,500.00 | 96,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 47,388.00 | 47,388.00 | 38,500.00 | 58,500.00 | 38,500.00 | 38,500.00 |
| **TOTAL GROSS INCOME:** | $59,112.00 | $59,112.00 | $58,000.00 | $38,000.00 | $58,000.00 | $58,000.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 18,000.00 | 18,000.00 | 18,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $45,750.00 | $45,750.00 | $45,750.00 | $45,750.00 | $45,750.00 | $45,750.00 |
| **NET INCOME:** | $13,362.00 | $13,362.00 | $12,250.00 | -$7,750.00 | $12,250.00 | $12,250.00 |
| **PLAN PAYMENT:** | $0.00 | $3,000.00 | $7,158.00 | $7,158.00 | $7,158.00 | $7,158.00 |
| **NET CASH ON HAND:** | **$25,424.00** | **$35,786.00** | **$40,878.00** | **$25,970.00** | **$31,062.00** | **$36,154.00** |

26-41179-mar   Doc 63   Filed 06/26/26   Entered 06/26/26 09:50:49   Page 28 of 40

# MEXCOL GROUP, LLC

**PROJECTIONS OF INCOME & EXPENSE**

JANUARY 2027 - JUNE 2027

|  | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 67,500.00 | 67,500.00 | 81,500.00 | 81,500.00 | 96,500.00 | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 27,500.00 | 25,250.00 | 32,500.00 | 32,500.00 | 38,500.00 | 47,388.00 |
| **TOTAL GROSS INCOME:** | $40,000.00 | $42,250.00 | $49,000.00 | $49,000.00 | $58,000.00 | $59,112.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $47,650.00 | $47,650.00 | $47,650.00 | $47,650.00 | $47,650.00 | $47,650.00 |
| **NET INCOME:** | -$7,650.00 | -$5,400.00 | $1,350.00 | $1,350.00 | $10,350.00 | $11,462.00 |
| **PLAN PAYMENT:** | $7,158.00 | $6,158.00 | $6,158.00 | $6,158.00 | $6,158.00 | $7,408.00 |
| **NET CASH ON HAND:** | **$21,346.00** | **$9,788.00** | **$4,980.00** | **$172.00** | **$4,364.00** | **$8,418.00** |

26-41179-mar  Doc 63  Filed 06/26/26  Entered 06/26/26 09:50:49  Page 29 of 40

# MEXCOL GROUP, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JULY 2027 - DECEMBER 2027**

| | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 106,500.00 | 106,500.00 | 101,500.00 | 101,500.00 | 101,500.00 | 103,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 47,388.00 | 47,388.00 | 38,500.00 | 58,500.00 | 38,500.00 | 38,500.00 |
| **TOTAL GROSS INCOME:** | $59,112.00 | $59,112.00 | $63,000.00 | $43,000.00 | $63,000.00 | $65,000.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 21,000.00 | 21,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $48,850.00 | $48,850.00 | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 |
| **NET INCOME:** | $10,262.00 | $10,262.00 | $13,150.00 | -$6,850.00 | $13,150.00 | $15,150.00 |
| **PLAN PAYMENT:** | $6,158.00 | $6,158.00 | $7,408.00 | $6,158.00 | $6,158.00 | $7,408.00 |
| **NET CASH ON HAND:** | $12,522.00 | $16,626.00 | $22,368.00 | $9,360.00 | $16,352.00 | $24,094.00 |

# MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JANUARY 2028 - JUNE 2028

|  | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 69,500.00 | 69,500.00 | 86,000.00 | 86,000.00 | 96,500.00 | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 30,400.00 | 28,150.00 | 32,500.00 | 32,500.00 | 38,500.00 | 47,388.00 |
| **TOTAL GROSS INCOME:** | $39,100.00 | $41,350.00 | $53,500.00 | $53,500.00 | $58,000.00 | $59,112.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 18,000.00 | 18,000.00 | 18,000.00 | 18,000.00 | 21,000.00 | 21,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $45,750.00 | $45,750.00 | $45,750.00 | $45,750.00 | $48,750.00 | $48,750.00 |
| **NET INCOME:** | -$6,650.00 | -$4,400.00 | $7,750.00 | $7,750.00 | $9,250.00 | $10,362.00 |
| **PLAN PAYMENT:** | $6,158.00 | $6,158.00 | $7,408.00 | $6,158.00 | $6,158.00 | $7,408.00 |
| **NET CASH ON HAND:** | **$11,286.00** | **$728.00** | **$1,070.00** | **$2,662.00** | **$5,754.00** | **$8,708.00** |

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
### JULY 2028 - DECEMBER 2028

|  | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 106,500.00 | 106,500.00 | 96,500.00 | 96,500.00 | 96,500.00 | 96,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 47,388.00 | 47,388.00 | 38,500.00 | 58,500.00 | 38,500.00 | 38,500.00 |
| **TOTAL GROSS INCOME:** | $59,112.00 | $59,112.00 | $58,000.00 | $38,000.00 | $58,000.00 | $58,000.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 |
| **NET INCOME:** | $9,262.00 | $9,262.00 | $8,150.00 | -$11,850.00 | $8,150.00 | $8,150.00 |
| **PLAN PAYMENT:** | $4,658.00 | $4,658.00 | $5,908.00 | $4,658.00 | $4,658.00 | $5,908.00 |
| **NET CASH ON HAND:** | **$13,312.00** | **$17,916.00** | **$20,158.00** | **$3,650.00** | **$7,142.00** | **$9,384.00** |

# MEXCOL GROUP, LLC

### PROJECTIONS OF INCOME & EXPENSE

JANUARY 2029 - JUNE 2029

|  | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 86,500.00 | 84,500.00 | 81,500.00 | 86,500.00 | 96,500.00 | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 31,800.00 | 29,550.00 | 32,500.00 | 32,500.00 | 38,500.00 | 47,388.00 |
| **TOTAL GROSS INCOME:** | $54,700.00 | $54,950.00 | $49,000.00 | $54,000.00 | $58,000.00 | $59,112.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 |
| **NET INCOME:** | $4,850.00 | $5,100.00 | -$850.00 | $4,150.00 | $8,150.00 | $9,262.00 |
| **PLAN PAYMENT:** | $4,658.00 | $4,658.00 | $5,908.00 | $4,658.00 | $4,658.00 | $5,908.00 |
| **NET CASH ON HAND:** | **$9,576.00** | **$10,018.00** | **$3,260.00** | **$2,752.00** | **$6,244.00** | **$9,598.00** |

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
### JULY 2029 - DECEMBER 2029

|  | Jul-29 | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 106,500.00 | 106,500.00 | 96,500.00 | 96,500.00 | 96,500.00 | 101,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 47,388.00 | 47,388.00 | 38,500.00 | 58,500.00 | 38,500.00 | 38,500.00 |
| **TOTAL GROSS INCOME:** | $59,112.00 | $59,112.00 | $58,000.00 | $38,000.00 | $58,000.00 | $63,000.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 | $49,850.00 |
| **NET INCOME:** | $9,262.00 | $9,262.00 | $8,150.00 | -$11,850.00 | $8,150.00 | $13,150.00 |
| **PLAN PAYMENT:** | $4,658.00 | $4,658.00 | $5,908.00 | $4,658.00 | $4,658.00 | $5,908.00 |
| **NET CASH ON HAND:** | $14,202.00 | $18,806.00 | $21,048.00 | $4,540.00 | $8,032.00 | $15,274.00 |

26-41179-mar  Doc 63  Filed 06/26/26  Entered 06/26/26 09:50:49  Page 34 of 40

# MEXCOL GROUP, LLC

PROJECTIONS OF INCOME & EXPENSE

JANUARY 2030 - JUNE 2030

|  | Jan-30 | Feb-30 | Mar-30 | Apr-30 | May-30 | Jun-30 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 76,700.00 | 76,700.00 | 86,500.00 | 86,500.00 | 96,500.00 | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 29,100.00 | 29,100.00 | 32,500.00 | 32,500.00 | 38,500.00 | 47,388.00 |
| **TOTAL GROSS INCOME:** | $47,600.00 | $47,600.00 | $54,000.00 | $54,000.00 | $58,000.00 | $59,112.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 22,000.00 | 22,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $47,950.00 | $47,950.00 | $47,950.00 | $47,950.00 | $49,950.00 | $49,950.00 |
| **NET INCOME:** | -$350.00 | -$350.00 | $6,050.00 | $6,050.00 | $8,050.00 | $9,162.00 |
| **PLAN PAYMENT:** | $4,658.00 | $4,658.00 | $5,908.00 | $4,658.00 | $4,658.00 | $5,908.00 |
| **NET CASH ON HAND:** | **$5,466.00** | **$458.00** | **$600.00** | **$1,992.00** | **$5,384.00** | **$8,638.00** |

26-41179-mar  Doc 63  Filed 06/26/26  Entered 06/26/26 09:50:49  Page 35 of 40

# MEXCOL GROUP, LLC

PROJECTIONS OF INCOME & EXPENSE

JULY 2030 - DECEMBER 2030

| | Jul-30 | Aug-30 | Sep-30 | Oct-30 | Nov-30 | Dec-30 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 106,500.00 | 106,500.00 | 96,500.00 | 96,500.00 | 96,500.00 | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 47,388.00 | 47,388.00 | 38,500.00 | 58,500.00 | 38,500.00 | 38,500.00 |
| **TOTAL GROSS INCOME:** | $59,112.00 | $59,112.00 | $58,000.00 | $38,000.00 | $58,000.00 | $68,000.00 |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $49,950.00 | $49,950.00 | $49,950.00 | $49,950.00 | $49,950.00 | $49,950.00 |
| **NET INCOME:** | $9,162.00 | $9,162.00 | $8,050.00 | -$11,950.00 | $8,050.00 | $18,050.00 |
| **PLAN PAYMENT:** | $4,658.00 | $4,658.00 | $5,908.00 | $4,658.00 | $4,658.00 | $5,908.00 |
| **NET CASH ON HAND:** | **$13,142.00** | **$17,646.00** | **$19,788.00** | **$3,180.00** | **$6,572.00** | **$18,714.00** |

26-41179-mar Doc 63 Filed 06/26/26 Entered 06/26/26 09:50:49 Page 36 of 40

## MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JANUARY 2031 - JUNE 2031

|  | Jan-31 | Feb-31 | Mar-31 | Apr-31 | May-31 | Jun-31 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 81,500.00 | 81,500.00 | 87,500.00 | 87,500.00 | 96,500.00 | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 35,300.00 | 35,300.00 | 36,500.00 | 36,500.00 | 38,500.00 | 47,388.00 |
| | | | | | | |
| **TOTAL GROSS INCOME:** | $46,200.00 | $46,200.00 | $51,000.00 | $51,000.00 | $58,000.00 | $59,112.00 |
| | | | | | | |
| **EXPENSES** | | | | | | |
| INSURANCE | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| UTILITIES | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| PAYROLL | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| | | | | | | |
| **TOTAL EXPENSES:** | $48,050.00 | $48,050.00 | $48,050.00 | $48,050.00 | $48,050.00 | $48,050.00 |
| | | | | | | |
| **NET INCOME:** | -$1,850.00 | -$1,850.00 | $2,950.00 | $2,950.00 | $9,950.00 | $11,062.00 |
| | | | | | | |
| **PLAN PAYMENT:** | $4,658.00 | $4,658.00 | $5,908.00 | $4,658.00 | $4,658.00 | $5,908.00 |
| | | | | | | |
| **NET CASH ON HAND:** | **$12,206.00** | **$5,698.00** | **$2,740.00** | **$1,032.00** | **$6,324.00** | **$11,478.00** |

# MEXCOL GROUP, LLC
### PROJECTIONS OF INCOME & EXPENSE
#### JULY 2031 - DECEMBER 2031

|  | Jul-31 | Aug-31 |
|---|---|---|
| **INCOME** | | |
| GROSS SALES | 106,500.00 | 106,500.00 |
| COST OF GOODS SOLD (FOOD / ALCOHOL) | 47,388.00 | 47,388.00 |
| **TOTAL GROSS INCOME:** | $59,112.00 | $59,112.00 |
| **EXPENSES** | | |
| INSURANCE | 1,500.00 | 1,500.00 |
| UTILITIES | 2,500.00 | 2,500.00 |
| PAYROLL | 22,000.00 | 22,000.00 |
| PAYROLL TAX | 3,000.00 | 3,000.00 |
| MAINTENANCE | 500.00 | 500.00 |
| OFFICE SUPPLIES | 100.00 | 100.00 |
| REPAIRS / PARTS | 250.00 | 250.00 |
| LICENSES / PERMITS | 250.00 | 250.00 |
| SALES / USE TAX | 4,800.00 | 4,800.00 |
| CREDIT CARD FEES | 1,000.00 | 1,000.00 |
| BANK FEES | 100.00 | 100.00 |
| LEASE PAYMENT | 11,000.00 | 11,000.00 |
| REAL PROPERTY TAX | 3,000.00 | 3,000.00 |
| PERSONAL PROPERTY TAX | 50.00 | 50.00 |
| **TOTAL EXPENSES:** | $50,050.00 | $50,050.00 |
| **NET INCOME:** | $9,062.00 | $9,062.00 |
| **PLAN PAYMENT:** | $4,658.00 | $4,658.00 |
| **NET CASH ON HAND:** | **$15,882.00** | **$20,286.00** |

In re:                                                      Chapter 11

Mexcol Group LLC,                                           Case No. 26-41179

    Debtor.                                              Hon. Mark A. Randon

_____/

# AMENDED SCHEDULING ORDER

On June 12, 2026, the Court entered a stipulated order withdrawing Debtor's amended

plan. Pursuant to that order, the Court extends the dates and deadlines as follows:

1. The deadline for the debtor to file a second amended plan is *June 26, 2026*.

2. The deadline to return ballots on the plan, as well as to file objections to confirmation of the plan is *August 3, 2026*.

3. No later than *August 10, 2026*, the debtor must file a signed ballot summary indicating the ballot count under 11 U.S.C. § 1126(c) & (d). A copy of all ballots must be attached to this summary.

4. The hearing on confirmation of the plan will be held IN PERSON on *August 17, 2026, at 11:00 a.m.*

**IT IS ORDERED.**
**Signed on June 14, 2026**



/s/ Mark A. Randon
_____
**Mark A. Randon**
**United States Bankruptcy Judge**

211 West Fort Street
Detroit, MI 48226

## UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

Case No.: **26−41179−mar**

In Re: (NAME OF DEBTOR(S))

Mexcol Group LLC

_____ /

### AMENDED NOTICE OF ORDER ESTABLISHING DEADLINES AND PROCEDURES IN A SUBCHAPTER V CASE

NOTICE IS HEREBY GIVEN that on **06/14/26** an Order Establishing Deadlines and Procedures in a Subchapter V Case was entered in the above entitled case. Therefore, the following deadlines and hearing dates are in effect:

1. Deadline for debtor to file motions is **n/a**. This is also the deadline to file all unfiled overdue tax returns.

2. Status conference is set for **at in** .

3. Deadline to file the pre−status conference report is **n/a**.

4. Deadline for debtor to file a plan is **6/26/26**.

5. Deadline to return ballots on plan and file objections to confirmation of plan is **08/03/26**. Ballot form should be returned to debtor's attorney.

6. Deadline for creditors to make an election of application of 11 U.S.C. § 1111(b)(2) is **n/a**.

7. Deadline for the ballot summary is **08/10/26**.

8. Hearing on objections and confirmation of plan is set for **8/17/26 at 11:00 AM in Courtroom 1825, 211 West Fort St., Detroit, MI 48226**.

9. Deadline for all professionals to file final fee applications is **30 days after the confirmation order is entered**.

10. Deadline to file objections to the Order Establishing Deadlines and Procedures is **n/a**.

11. Deadline to file a motion to extend the deadline to file a plan is **n/a**.

12. Deadline to file a motion to extend the time to file a motion to assume or reject a lease under 11 U.S.C.§ 365(d) is **n/a**.

These dates and deadlines are subject to change upon notice if the debtor files a plan before the deadline in item 4 above.

Dated: 6/15/26

Todd M. Stickle , Clerk of Court
UNITED STATES BANKRUPTCY COURT

# UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

In Re: Mexcol Group LLC

Case no. 26-41179
Ch. 11
Judge: Mark A. Randon

Debtor.

_____/

## CLASS [ ] BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION

**Bankruptcy Law Office filed an Second Amended Plan of Reorganization dated 6/26/2026 (the "Plan") for the Debtor in this case.**

**You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Bankruptcy Law Office, 2425 S. Linden Rd., Ste. C, Flint, MI 48532, on or before August 3, 2026 and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

### ACCEPTANCE OR REJECTION OF THE PLAN

*(Check one box only)*

[ ] ACCEPTS THE PLAN                          [ ] REJECTS THE PLAN

Dated:_____              Print or type name:

                               Signature:

                               Address: _____

                                        _____

                                        _____

RETURN THIS BALLOT TO:
Bankruptcy Law Office
George E. Jacobs
2425 S. Linden Rd., Ste. C
Flint, MI 48532