**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: Mexcol Group, LLC, | Case No. 26-41179 |
| | Chapter 11 |
| Debtor. | Judge Mark A. Randon |

______________________________/

**HARVEST SMALL BUSINESS FINANCE, LLC'S OBJECTION TO CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION**

Harvest Small Business Finance, LLC ("Harvest"), by and through its attorneys, objects to confirmation of Debtor, Mexcol Group, LLC's ("Debtor"), Second Amended Plan of Reorganization (the "Plan") and states as follows:

Debtor's original Plan of Reorganization ("Prior Plan") was premised upon the incorrect assertion that Debtor owned the real property from which it operates, commonly known as 21 South Washington St., Oxford, MI 48371 (the "Property"). The Property is subject to a first priority perfected Mortgage in favor of Harvest, a copy of which is attached as **Exhibit A**. Harvest's counsel identified this factual issue to Debtor's counsel, along with several other concerns regarding the Prior Plan and feasibility issues. Debtor subsequently filed the Plan correcting the ownership of the Property, but the Plan still includes fatal flaws that prevent confirmation under

Chapter 11 of Title 11 of the United States Bankruptcy Code ("Code") because the Plan fails to satisfy the confirmation requirements of 11 U.S.C. § 1129.

## A. The Plan Is Not Feasible

The Plan fails to satisfy 11 U.S.C. § 1129(a)(11) because further financial reorganization is required for Debtor to continue operating. The Plan is not feasible.

### 1. The Lease is Deemed Rejected and Debtor Does Not Have the Liquidity Required to Cure the Arrearage to Assume

Debtor leases the Property from its principal, Mr. Pimentel (the "Lease"). Under 11 U.S.C. § 365(d), a lease is deemed rejected unless timely assumed. The deadline to assume the Lease was June 4, 2026 (120 days after the Petition Date, February 4, 2026) and the Lease was not assumed, so it is deemed rejected. If assumption was still possible, it would be conditioned upon compliance with the requirements of 11 U.S.C. § 365(b), including the cure of all existing defaults under the Lease. Debtor has not demonstrated an ability to satisfy those requirements. At a minimum, assumption would require payment of all accrued rent arrearages[1] and all delinquent real and personal property taxes that are required to be paid under the

[1] In an email dated June 25, 2026 to Debtor's counsel, Harvest requested an accounting of the arrearage. This information has not been provided, but it is clear that there is a substantial prepetition arrearage and it appears that no rent has been paid during the pendency of this Case. At $11,000 per month, that is $66,000.

Lease. The Plan does not provide for payment of these cure obligations and the Debtor's projections do not demonstrate the financial ability to satisfy them.

Debtor’s counsel has asserted that the Lease defaults need not be cured because Mr. Pimentel and the Debtor may renegotiate the terms of the Lease. This assertion is incorrect. The Lessee’s Assignment of Lease and Subordination (“Lease Assignment”), attached as **Exhibit B**, executed by Debtor, as lessee and co-borrower, and Mr. Pimentel, as co-borrower, provides that “Lessee further acknowledges that, as long as Lender has a security interest in the Lease, any modification, alteration or amendment of any of the terms thereof without the prior written approval of Lender, such approval not to be unreasonably withheld, shall be null and void.” Accordingly, Mr. Pimentel lacks authority to waive Lease arrearages or otherwise modify the Lease terms. Any attempt to eliminate or forgive cure obligations through a postpetition modification of the Lease is not permitted under the Lessee’s Assignment of Lease and Subordination.[2]

Because Debtor cannot avoid its cure obligations and has failed to demonstrate sufficient funds to make the required cure payments, the Lease cannot be assumed. Without the ability to assume the Lease governing the Property from which Debtor conducts its business, Debtor cannot demonstrate a reasonable

[2] All of the rent and other obligations under the Lease are subject to a first priority lien in favor of Harvest.

likelihood of successful reorganization. The Plan is therefore not feasible and fails to satisfy 11 U.S.C. § 1129(a)(11).

**2. Debtor Does Not Appear to be Profitable**

Based on the facts that have been provided, Debtor will not generate sufficient cash flow to pay its obligations.

Debtor's Schedules identify that its cash at the time of filing was $3,750. Debtor's most recent Monthly Operating Report, filed June 22, 2026, identifies total cash of $49,700.44 as of May 31, 2026. This cash balance is without Debtor making monthly payments required under the Plan (including, without limitation, rent ($11,000), real property taxes ($3,000), personal property taxes ($50), payments to Harvest ($2,346) and payments to the State of Michigan ($2,312). Accordingly, Debtor's cash flow over the period of the Petition Date through May 31, 2026 would have been insufficient to meet its monthly Plan obligations.

The projections attached to the Plan identify projected gross sales for July and August of 2026 of $106,500, for September through December 2026 of $96,500 each month and varies thereafter. Debtor's Monthly Operating Reports identify total cash received for each month as $61,365.51 (February), $75,876.41 (March), $81,215.31 (April), and $114,640.24 (May). For Debtor's projections to be accurate, its sales

must be higher over the next several months than they were each month that it has reported, other than the most recent month.[3]

Additionally, certain monthly expenses identified in the Plan appear to be less than amounts Debtor reported to Harvest in 2023. For example:

| Expense | Monthly Amount based on 2023 Report | Plan Projections |
|---|---|---|
| Insurance | $1,727 | $1,200 |
| Utilities | $5,178 | $2,500 |
| Maintenance & Repairs | $1,962 | $750 |
| Office/Office Supplies | $206 | $100 |
| Credit Card Fees | $3,798 (~4.2% of gross sales) | $1,000 (~1% of gross sales) |

And, among others, the following line items identified in Debtor's 2023 reporting to Harvest do not appear to be in the projections: advertising, equipment rent, telephone (unless included in utilities), accounting, legal, security, health insurance (unless included in insurance), laundry and uniforms, miscellaneous, management fee, and automobile.

[3] Additionally, the Prior Plan projected much lower gross sales ($81,000 for July and August and $76,000 for September, October, and November) but also a lower cost of goods sold. It is unclear if this change in the projections is warranted due to change in circumstances with the passage of time, or if this is manipulation to make the numbers appear to work.

While it is possible that Debtor has achieved certain efficiencies and/or that certain costs are now less (or non-existent) for other reasons, Debtor should verify that its projected expenses are in line with historical actual expenses (or that there is a reason for the reduction).

A Plan that assumes profitability well in excess of what Debtor has shown it is able to achieve in past months, and expenses that are less than they have historically been, is not feasible.

### B. The Plan Does Not Identify How Certain Obligations Will be Paid.

The Plan identifies that Debtor's Lease is a triple net Lease, but does not provide for how the past due real estate taxes, building insurance, and maintenance costs will be paid (in addition to the rent arrearage). As identified above, Debtor's counsel indicated that the Landlord might be waiving Debtor's obligations to pay those amounts under the Lease, but the Plan does not include this waiver or indicate that the Landlord has agreed to pay the amounts that are due to third parties. The Plan also does not address the contractual limitations in the Lease Assignment on the ability to modify the Lease.

### C. The Plan Does Not Identify the Correct Amount of Harvest's Secured Claim

The Plan identifies that the amount of Harvest's secured claim is $110,250. This appears to be the total value that Debtor has assigned to the assets identified in

the liquidation analysis attached to the Plan (which incorrectly identifies that there is no lien on Debtor's cash, as it is subject to Harvest's lien). The cash component, $3,750, is the amount of Debtor's cash on its Petition Date. Harvest's secured claim should be increased to reflect Debtor's current cash balance.

For the foregoing reasons, Harvest respectfully requests that the Court deny confirmation of the Plan unless and until the Debtor cures the deficiencies identified herein, including demonstrating compliance with 11 U.S.C. § 365 and feasibility as required under 11 U.S.C. § 1129(a)(11), and correcting (or otherwise providing support for) the Plan projections.

Dated: July 31, 2026

Respectfully submitted,

/s/ *Robert J. Diehl, Jr.*

Robert J. Diehl, Jr. (P31264)
Jaimee L. Witten (P70068)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
rdiehl@bodmanlaw.com
jwitten@bodmanlaw.com

Attorneys for Harvest Small Business Finance, LLC